IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION, AT JEFFERSON CITY

| | |
|---|---|
| TANYA ANDREWS, on behalf of minor children C.A. and S.A.<br>39379 Highway K<br>Warsaw, Missouri 65355<br><br>　　　　　Plaintiffs,<br>v.<br><br>FORD MOTOR COMPANY<br>**Serve registered agent:**<br>The Corporation Company<br>120 South Central Avenue<br>Clayton, Missouri 63105<br><br>　　　　　Defendants. | Case No: 2:18-cv-4115<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' COMPLAINT

COME NOW Plaintiffs C.A. and S.A. (minors), by and through their natural mother, Tanya Andrews, and their attorneys of record, for their Complaint against Defendant Ford Motor Company state and allege as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff C.A. is a minor child residing with his mother, Tanya Andrews, at 39379 Highway K, Warsaw, Missouri 65355.

2. Plaintiff S.A. is a minor child residing with his mother, Tanya Andrews, at 39379 Highway K, Warsaw, Missouri 65355.

3. Tanya Andrews is the natural mother of C.A. and S.A. and, therefore, is the proper party to bring this suit pursuant to Mo. Rev. Stat. § 507.110.

4. Plaintiffs C,A., S.A., and their natural mother Tanya Andrews are citizens and residents of the State of Missouri, residing at 39379 Highway K, Warsaw, Missouri 65355.

1

5. Defendant Ford Motor Company (hereinafter "Ford") is a corporation organized and existing under the laws of the State of Delaware, with its principle place of business in Michigan. Defendant Ford may be served with process through its registered agent at the above-captioned address.

6. Defendant Ford is registered to do business in the State of Missouri, maintains a registered agent in the State of Missouri, and may be served with process through its registered agent at the above-listed Missouri address.

7. Pursuant to 28 U.S.C. § 1332, this Court has subject-matter jurisdiction over this civil action, as the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the parties.

8. Defendant Ford is and was in the business of, *inter alia*, designing, engineering, manufacturing, distributing and selling vehicles under various brand names, including Ford, Lincoln and Mercury.

9. Defendant Ford is subject to the general jurisdiction of this Court, in that it is a corporation conducting substantial business within the State of Missouri by maintaining continuous and systematic contacts with the State of Missouri, *including, but not limited to*:

   a. Ford maintains at least one place of business in Missouri, the Kansas City Assembly Plant located in Claycomo, Missouri;

   b. The Kansas City Assembly Plant is located on an approximately 1,269 acre site in Clay County, Missouri, and the plant encompasses approximately 4,717,565 square feet;

   c. The Kansas City Assembly Plant employs approximately 7,465 workers;

    d. The Kansas City Assembly Plant currently produces the Ford F-150 and Ford Transit, and previously produced the Ford Fairlane, Mercury Meteor, Ford Falcon, Mercury Comet, Ford Maverick, Ford Fairmont, Mercury Zephyr, Ford Tempo, Mercury Topaz, Ford Contour, Mercury Mystique, Ford Escape, Mazda Tribute, Mercury Mariner and Lincoln Blackwood;

    e. Ford has produced over one million vehicles at the Kansas City Assembly Plant, which has been in operation for more than half a century;

    f. Ford transports new Ford and Lincoln vehicles on Missouri highways and roadways for distribution throughout the State of Missouri and the United States; and/or

    g. Ford transports used Ford, Lincoln, and Mercury vehicles on Missouri highways and roadways for distribution throughout the State of Missouri and the United States.

10. Defendant Ford's business contacts with the State of Missouri are so continuous and systematic as to render it essentially at home in Missouri, and as such, this Court may exercise general jurisdiction over Defendant Ford.

11. Defendant Ford is subject to the specific jurisdiction of this Court, in that:

    a. Ford distributed and sold the subject vehicle, a 2009 Ford Fusion (VIN 3FAHP08Z99R189462), to a dealership in Missouri for sale to the ultimate consumer;

    b. The subject vehicle was originally sold and its title registered in the State of Missouri;

3

Case 2:18-cv-04115-WJE   Document 1   Filed 06/07/18   Page 3 of 10

c. At the time of such sale and distribution by Ford, the subject vehicle was then in a defective and unreasonably dangerous condition, as set forth more fully below; and/or,

d. At the time of the subject motor vehicle accident; the subject vehicle was licensed in the State of Missouri and owned/operated by a Missouri resident.

12. Defendant Ford, through the acts of its employees or agents, has submitted itself to the jurisdiction of this Court pursuant to the State of Missouri's long-arm statute, R.S.Mo. § 506.500, in that it transacted business in this state, made a contract in this state, and/or committed a tortious act in this state.

13. Defendant Ford has purposely availed itself of the privilege of conducting business in the State of Missouri, and has thereby consented to the jurisdiction of this Court. Defendant Ford's conduct and connection with the State of Missouri are such that it could reasonably anticipate being haled into a court in the State of Missouri.

14. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.2(a)(2), in that a substantial part of the events giving rise to this claim occurred within this judicial district, in that the motor vehicle accident that is the subject of this action occurred in Benton County, Missouri, a county within the Central Division of this District.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

15. Defendant Ford is engaged in the design, manufacture, distribution, and sale of passenger cars, including the subject 2009 Ford Fusion (VIN 3FAHP08Z99R189462) involved in the incident giving rise to the Plaintiffs' Petition ("Subject Vehicle").

16. On August 15, 2017, Mikayla Andrews was driving the Subject Vehicle northbound on Route K near Missouri Highway 83.

4

17. At the time of the subject collision, Tanya Andrews was the front seat passenger, S.A. was in the right rear passenger seat; and C.A. was in the left rear passenger seat.

18. At all relevant times to this litigation, each of the occupants in the subject vehicle were properly wearing his or her seatbelt.

19. As Mikayla Andrews was traveling northbound on Route K, she drove around a curve in the roadway and saw Adrienne Gardiner driving southbound in the northbound lane.

20. Mikayla Andrews attempted to avoid Adrienne Gardiner, but the vehicles collided head-on (hereinafter "Subject Collision").

21. At all times relevant to the Subject Collision, Mikayla Andrews was operating the Subject Vehicle in a manner reasonably anticipated and intended by Defendant Ford.

22. As a result of the subject collision and defective/unreasonably dangerous conditions associated with the Subject Vehicle, the Plaintiffs sustained severe injuries.

## COUNT I – DEFENDANT FORD – STRICT LIABILITY

23. Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs as if more fully set forth herein.

24. Defendant Ford designed, manufactured, tested, marketed, distributed, inspected, sold, and serviced Ford vehicles, including the Subject Vehicle, in the ordinary course of its business.

25. At the time the Subject Vehicle left the control of Defendant Ford, it was defective and unreasonably dangerous in several respects, *including, but not limited to*, the following:

   a. The restraint system and seat system, including their component parts failed to properly restrain and protect the second-row occupants in a foreseeable frontal crash event;

   b. The restraint system and seat system, including their component parts lacked adequate design to assure proper performance in foreseeable crash conditions;

    c. The restraint system and seat system, including their component parts lacked adequate testing and/or inspection before it was distributed and sold to ensure they were reasonably suitable for their intended purpose and provide adequate occupant protection in foreseeable crash conditions; and,

    d. The restraint system and seat system, including their component parts lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition, as herein described, involving their use and operation.

26. The Subject Vehicle was expected to and did reach the hands of the owner without substantial change or modification and was in substantially the same condition on or about August 15, 2017, as it was when it left the possession and control of Defendant Ford.

27. At all times pertinent, the Subject Vehicle was used in a manner reasonably anticipated and intended by the Defendant Ford.

28. Defendant Ford knew or should have known that the Subject Vehicle would be used without inspection for defects, and it represented that the Subject Vehicle could be safely used for the ordinary purpose for which it was purchased.

29. Defendant Ford knew or should have known that the Subject Vehicle was defectively designed or defectively manufactured in the particular respects set forth above.

30. Furthermore, the Subject Vehicle was in a defective and unreasonably dangerous condition in that it failed to give the Plaintiffs fair and adequate notice of the danger and possible consequences of using the subject vehicle in the intended and appropriate manner.

31. As a direct and proximate result of the defective condition and unreasonably dangerous nature of the Subject Vehicle, the Plaintiffs sustained severe injuries.

32. As a direct result of the defective condition of the Subject Vehicle, Plaintiffs sustained the following damages: past, present and future medical and rehabilitation expenses; pain and suffering and psychological anguish; loss of enjoyment of life; permanent loss of the

6

Case 2:18-cv-04115-WJE   Document 1   Filed 06/07/18   Page 6 of 10

complete and normal use of body; impairment of general health, strength and vitality; and permanent impairment of earning capacity.

33. Defendant Ford distributed and sold the Subject Vehicle to the public in a defective condition with conscious disregard for the potential risks to consumers, thereby demonstrating willful, wanton and malicious conduct and showing a complete indifference to or conscious disregard for the safety of others. Due to the nature of Defendant Ford's actions, Plaintiffs are entitled to punitive damages in an amount that will serve to punish Defendant Ford and to deter like conduct.

**WHEREFORE**, Plaintiffs S.A. and C.A., by and through their natural mother, Tanya Andrews, prays for this Court to enter judgment against Defendant Ford for a reasonable sum of money as will fairly and reasonably compensate Plaintiff for her injuries and damages; for Plaintiffs' costs herein expended and incurred; for prejudgment interest; for post-judgment interest; for punitive damages; and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II – DEFENDANT FORD – NEGLIGENCE

34. Plaintiffs hereby incorporate by reference the allegations set forth above in the foregoing paragraphs as though more fully set forth herein.

35. Prior to August 15, 2017, Defendant Ford marketed, distributed, inspected, sold, and serviced Ford vehicles, including the Subject Vehicle, in the ordinary course of its business.

36. At all times relevant hereto, Defendant Ford was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and selling Ford Fusion vehicles.

37. As a motor vehicle designer, manufacturer, distributer and seller, Defendant Ford knew that users of their vehicles could be involved in motor vehicle collisions, and the extent of

their injuries would frequently be determined by the design and construction of their vehicles, including the Subject Vehicle.

38. Defendant Ford had a duty to exercise reasonable care in the design, testing, manufacture and sale of the Subject Vehicle.

39. Defendant Ford breached its duty to exercise reasonable care in the design, testing, manufacture and sale of the Subject Vehicle in multiple respects, *including, but not limited to*:

   a. The Subject Vehicle was not crashworthy for restrained rear seat occupants in frontal collisions;

   b. The restraint system and seat system, including their associated component parts failed to properly restrain and protect the second-row occupants in a foreseeable frontal crash event;

   c. The restraint system and seat system, including their associated component parts lacked adequate design to assure proper performance in foreseeable crash conditions;

   d. The restraint system and seat system, including their associated component parts lacked adequate testing and/or inspection before it was distributed and sold to ensure they were reasonably suitable for their intended purpose and provide adequate occupant protection in foreseeable crash conditions;

   e. The restraint system and seat system, including their associated component parts lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition, as herein described, involving their use and operation

   f. Prior to August 15, 2017, Defendant Ford failed to recall the Ford Fusion for the purpose of making alternative design features available for the protection of the second-row passengers riding in the Fusion;

   g. Defendant Ford knowingly sold and continued to sell the Ford Fusion model to the public when the testing it did perform established that the Fusion model was defectively designed and unreasonably dangerous; and,

   h. In other respects unknown to Plaintiffs at this time but which may become known prior to trial.

40. The Subject Vehicle was unreasonably dangerous and defective for normal, foreseeable and reasonably anticipated use by and in the presence of the general public because of

its unreasonably dangerous, unsafe, and defective design, manufacture, testing, marketing, inspection, servicing, and distribution.

41. At all times pertinent, the Subject Vehicle was used in a manner reasonably anticipated and intended by Defendant Ford.

42. As a direct and proximate result of the defective condition and unreasonably dangerous nature of the Subject Vehicle, the Plaintiffs sustained severe injuries.

43. As a direct result of the defective condition of the Subject Vehicle, Plaintiffs sustained the following damages: past, present and future medical and rehabilitation expenses; pain and suffering and psychological anguish; loss of enjoyment of life; permanent loss of the complete and normal use of body; impairment of general health, strength and vitality; and permanent impairment of earning capacity.

44. Defendant Ford distributed and sold the Subject Vehicle to the public in a defective condition with conscious disregard for the potential risks to consumers, thereby demonstrating willful, wanton and malicious conduct and showing a complete indifference to or conscious disregard for the safety of others. Due to the nature of Defendant Ford's actions, Plaintiffs are entitled to punitive damages in an amount that will serve to punish Defendant Ford and to deter like conduct.

**WHEREFORE**, Plaintiffs S.A. and C.A., by and through their natural mother, Tanya Andrews, prays for this Court to enter judgment against Defendant Ford for a reasonable sum of money as will fairly and reasonably compensate Plaintiff for their injuries and damages; for Plaintiffs' costs herein expended and incurred; for prejudgment interest; for post-judgment interest; for punitive damages; and for such other and further relief as the Court deems just and proper under the circumstances.

9

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all allegations, claims and causes of action asserted herein.

Respectfully submitted,

**LANGDON & EMISON**

/s/ J. Kent Emison
J. Kent Emison, MO# 29721
Michael Serra, MO# 63237
911 Main Street
P. O. Box 220
Lexington, Missouri 64067
Telephone: (660) 259-6175
Facsimile: (660) 259-4571
kent@lelaw.com
mserra@lelaw.com

**ATTORNEYS FOR PLAINTIFFS**